ORIGINAL

FILED
JUN 1 8 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**GRUNLEY-WALSH, LLC**
**(f/k/a Grunley-Walsh Construction JV)** *

**Plaintiff,** *

**v.** * **Case No.: 07-391 C**
**Judge:**
**THE UNITED STATES OF AMERICA** * **(Mod 10 Unilateral Deductions Claim)**

**Defendant.** *

* * * * * * * * * * * * *

**COMPLAINT**

Plaintiff, Grunley-Walsh, LLC, formerly known as Grunley-Walsh Construction JV, ("Grunley-Walsh"), by its counsel, Roger C. Jones, Esq., of Huddles Jones Sorteberg & Dachille, P.C., sues the United States of America ("United States"), and for its Complaint in the above matter, respectfully states as follows:

**Jurisdiction**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 601 *et seq.* In addition, this action is related to Case Nos. 1:06-cv-00721-CFL, 1:06-cv-00723-CFL, 1:04-cv-00815-CFL, 1:06-cv-00816-CFL, 1:06-cv-00837-CFL and 1:07-cv-00085-CFL, 1:07-cv-00189-CFL, 1:07-cv-00190-CFL, 1:07-cv-00197-CFL, 1:07-cv-00200-CFL and 1:07-cv-00281-CFL as it arises out of the same contract and, therefore, should be consolidated with the aforesaid cases.

2. By Orders dated March 14, 2007 and May 31, 2007, this Court consolidated Case Nos. 1:06-cv-00721-CFL, 1:06-cv-00723-CFL, 1:04-cv-00815-CFL, 1:06-cv-00816-CFL, 1:06-cv-00837-CFL, 1:07-cv-00085-CFL, 1:07-cv-00189-CFL, 1:07-cv-00190-CFL, 1:07-cv-00197-

CFL, 1:07-cv-00200-CFL and 1:07-cv-00281-CFL and directed that all future filings designate Case No. 1:06-cv-00721-CFL as the lead case.

**The Parties**

3. Plaintiff, Grunley-Walsh, is a general contractor in the construction industry organized and existing under the laws of the State of Maryland, with its principal place of business located at 5010 Nicholson Lane, Suite 200, Rockville, Maryland 20852.

4. Defendant is the United States of America.

**The Certified Claim for Mod 10 Unilateral Deductions**

5. This action relates to a February 16, 2007 certified claim, in the amount of $210,000, submitted by Grunley-Walsh to the Contracting Officer (the "Certified Claim") pursuant to the Changes clause and the Disputes clause in the Contract. A copy of the Certified Claim is attached as **EXHIBIT A**.

6. By letter dated April 20, 2007 (attached as **EXHIBIT B**), the Contracting Officer advised that a Final Decision on the Certified Claim would be issued by May 31, 2007.

7. By letter dated June 14, 2007 (attached as **EXHBIT C**), the Contracting Officer issued a Final Decision denying the Certified Claim.

8. This action appeals the Final Decision denying the Certified Claim.

9. All conditions precedent for the filing of this action have been satisfied, waived and/or excused.

**The Contract**

10. On May 6, 1998, the United States, acting by and through the Department of the Interior – National Park Service (the "Park Service"), awarded Grunley-Walsh an Indefinite Quantity Contract (Contract No. 1443CX305998901) (the "Contract") to stabilize and preserve the Washington Monument (the "Project"). The Contract is incorporated by reference herein, but is not attached due to its voluminous nature. Defendant has a copy of the Contract in its possession.

11. Pursuant to Contract Modification No. 0007 ("MOD 7"), dated November 15, 2001, the General Provisions to the Contract were deleted and replaced with revised contract clauses which included certain FAR provisions incorporated by reference. A copy of MOD 7 is attached hereto as **EXHIBIT D**. Two of these provisions were the Changes clause (FAR 52.243-04 August 1987) and the Disputes clause (FAR 52.233-01 December 1998).

12. On February 9, 2007, the Park Service unilaterally issued Modification No. 10 (copy attached to **EXHIBIT A** at Exhibit 1), which arbitrarily and wrongfully deducted from Grunley-Walsh's Contract / Task Order $210,000.

**Modification No. 10 Constitutes a Breach of Contract**

13. The unilateral deductions in Modification No. 10 constitute a breach of contract.

**1. Street Sidewalk Work – Deduct ($190,000)**

14. Modification No. 10 alleges Grunley-Walsh has provided the Park Service "non-conforming" sidewalks, "generally identified as the 26 cracked panels and the cracked 15th Street panels." The modification attaches an incomplete (2nd page missing) copy of a November 7, 2006 Park Service letter that states, "Two areas of sidewalk dispute are the 15th Street sidewalks and the 26 panels." The modification provides no other documentation indicating the location of

the cracks in question, when the cracks were discovered, the cause of the cracks and/or the square footage of sidewalk concrete requiring correction.

a. **The 15th Street Sidewalk Work**

15. During the course of the Project, the Park Service directed Grunley-Walsh to replace the sidewalk along 15th Street as a change to the contract. Grunley-Walsh's cost proposal to perform this change work totaled $43,509 and the change work itself was performed during the period between May 17, 2005 and June 1, 2005. (A copy of Grunley-Walsh's cost proposal for the 15th Street Sidewalk work is attached to **EXHIBIT A** at Exhibit 2). Task Order No. 35, Modification No. 8, Item A.14 provided compensation to perform this change work in the amount of $43, 509.[1] (A copy of Modification No. 8 along with Grunley-Walsh's January 19, 2006 letter of clarification is attached to **EXHIBIT A** at Exhibit 3).




16. An important background aspect of this change work is the fact that it was directed by the Park Service just prior to the July 4, 2005 re-opening celebration of the Washington Monument Grounds. As such, due to the need to have this work quickly performed,

[1] Item A.14 of Modification No. 8 was included in the global settlement of several add and credit items that resulted in a net add of $150,000. The computation notes for this $150,000 amount include $43,509 for the 15th Street work

the Park Service did not require and/or issue any Task Order or directive to prepare a design for the sidewalk that would depict placement of joints, the type/placement of reinforcement steel, the use of any expansion material, the use of any caulking material and/or the interface of the new concrete work at existing foundations for telephone poles, light poles, traffic light poles, etc., which existed in the area of sidewalk to be replaced. Instead, the Park Service simply required Grunley-Walsh to provide several sample "mock-ups" which the Park Service reviewed and approved – particularly with respect to concrete color and aggregate.

17. In constructing the sidewalks, Grunley-Walsh utilized 6 inches of concrete with a 4,000 psi rating and a 4" slump. The concrete was placed on a compacted gravel sub-base and on-top of a 6" wire mesh. The entire construction process was observed by the Park Service's on-site representatives, who raised no comment, objection or concern about the construction methods.




18. As the Park Service is aware, approximately 4 months after the July 4, 2005 re-opening celebration for the Monument, cracks began to develop in the sidewalk. The location of these cracks was predominantly around existing structures in the sidewalks, such as light poles and telephone poles, which had their own existing concrete foundations. A standard felt

expansion joint material was used between the new sidewalk concrete and the existing foundations.




19. When the cracks began to develop, no one could explain why they were developing. The sidewalks were reviewed by Grunely-Walsh's A/E, as well as two independent inspectors hired by the engineer and Grunley-Walsh's subcontractor, Cherry Hill Construction. They, too, could not explain the reasons for the cracks.

20. Despite these facts, the Park Service demanded replacement of the cracked sidewalks. In doing so, they did not request a new design; nor did they provide Grunley-Walsh a new design (which is what the Park Service did in other locations where they wanted the sidewalks changed or replaced). In effect, without knowing what caused the sidewalk cracking, the Park Service wanted Grunley-Walsh to tear out the cracked sidewalks and replace them using the same construction methodology – regardless of whether they cracked again.

21. Given these circumstances, by letter dated August 24, 2006 (copy attached to **EXHIBIT A** at Exhibit 4), Grunley-Walsh rejected the Park Service's demand to replace the cracked sidewalk panels. In response, by letter dated November 7, 2006 (copy attached to **EXHIBIT A** as part of Exhibit 1), the Park Service attempted to impliedly attribute the cracking problems at the 15th Street sidewalks to other cracking issues on sidewalks which were part of the design development documents provided pursuant to Task Order No. 28.

22. For the 15th Street sidewalks, however, no design was ever provided/required. Further, the Park Service has provided no documentation or analysis to establish the construction

of the 15th Street sidewalks was defective and/or the cracks were the result of faulty construction. Rather, Modification No. 10 simply alleges the work was non-conforming. It does not explain the basis (other than the existence of cracks) for the alleged "non-conformance." It cannot do so because there was no design by which to establish and/or measure non-conformance against.

**b. <u>The Alleged 26 Cracked Panels</u>**

23. Cracks existed in certain sidewalk panels when the sidewalk work was substantially completed for the July 4, 2005 re-opening celebration. Some of the cracks were the result of vehicular traffic driving on the sidewalks.




Non Grunley-Walsh Vehicular Traffic Setting Up for the July 4, 2005 Re-Opening Celebration




Damage Done to Sidewalk by Non Grunley-Walsh Vehicular Traffic

24. Other cracks occurred which could not be explained. A large number of these cracks were identified, measured, and reviewed with both Grunley-Walsh personnel and Park Service personnel prior to the July 4, 2005 re-opening celebration. Thereafter, during a walkthrough in September 2005 additional cracks were identified, measured and reviewed with Grunley-Walsh personnel, the Park Service and the A/E team. At the time, it was decided to wait until the Spring of 2006 (after the winter of 2005 freeze/thaw cycles) to effect repairs. This is why the repair work began in May 2006.

25. During the repair work, a few additional cracks were found. Again these too were identified, measured and reviewed with both Grunley-Walsh and the Park Service personnel. By August 18, 2006, the last of the identified cracked sidewalks had been repaired and replaced. In total, 4,650 square feet (approximately 465 sidewalk panels) of sidewalk was replaced at a cost of $93,000 ($20 per square foot).




Sidewalk Crack Being Identified, Measured and Reviewed

26. Fourteen months after the July 4, 2005 re-opening celebration and after Grunley-Walsh had completed all of the sidewalk repair/replacement work, in September 2006, the Park Service allegedly identified 26 new cracks in sidewalks where they wanted the sidewalk panels replaced. This time, however, the cracks were not identified, measured and reviewed by both Grunley-Walsh and the Park Service. Rather, a Park Service employee apparently pointed out to Cherry Hill Construction's foreman the 26 cracks. To date, nothing has ever been provided to Grunley-Walsh identifying the location or even the existence of the 26 cracks (including the Park Service's letter of November 7, 2006).

27. These alleged 26 cracks were not observed during the inspections prior to the July 4, 2005 re-opening celebration; they were not observed in September 2005; nor were they observed when the repair/replacement work was being performed and completed. They were not observed until well over a year after the re-opening celebration and after numerous events on the Monument mall where the sidewalks were used by vehicular traffic of the Park Service and other Park Service agencies.

28. For these reasons, by letter dated November 10, 2006 (copy attached to **EXHIBIT A** as Exhibit 6), Grunley-Walsh informed the Park Service no additional sidewalks would be repaired or replaced. Maintenance of the Monument and its surrounding sidewalks was never a Grunley-Walsh contract responsibility.

**2. <u>Irrigation System Change Work – Deduct ($20,000)</u>**

29. Modification No. 10 also unilaterally deducts, without justification or explanation, $20,000 from Task Order No. 35 for alleged non-conforming irrigation work. This amount is not explained in Modification No. 10. As explained in Grunley-Walsh's December 15, 2006 letter (copy attached to **EXHIBIT A** as Exhibit 5), the Park Service winterized the irrigation system – rendering it inoperable. As such, as explained by Grunley-Walsh's irrigation design consultant, Lynch & Associates, as well as the irrigation subcontractor, Davey Tree (copies of their letters are attached to **EXHIBIT A** as part of Exhibit 5), to the extent any corrections to the system were needed, they had to wait until the spring start-up.

30. Similarly, as indicated in the Davey Tree letter, there were many items on the Park Service's irrigation system punch list that are not tied to any specification or contract requirement. There were also many items that were the result of damage to the irrigation system after major events on the Monument mall. Numerous irrigation valve boxes, for instance, were

damaged by fire trucks and park service vehicles driving across the grass. The irrigation system has been in operational use by the Park Service for nearly 2 years. The Park Service is improperly attempting to use Grunley-Walsh as its "maintenance contractor" as well as its installation contractor.

**COUNT I**

31. The allegations contained in paragraphs 1 through 30 above are incorporated by reference as through fully set forth herein.

32. The Park Service has breached the Contract/Task Order by issuing $210,000 of unilateral deductions in Modification No. 10 and withholding $210,000 in amounts owed for Contract/Task Order work performed by Grunley-Walsh.

33. As a result of the foregoing and pursuant to the Contract, Grunley-Walsh is entitled to be paid $210,000 for unpaid Contract/Task Order work which is being wrongfully withheld because of the Modification No. 10 unilateral deductions.

34. As such, the Park Service is liable to Grunley-Walsh for $210,000, plus interest thereon as allowed by the Contract Disputes Act.

**WHEREFORE**, Plaintiff, Grunley-Walsh, LLC, demands judgment against Defendant, The United States of America, for award of damages in the amount of $210,000, plus such other and further relief as this Court deems just and proper, including interest as required by the Contract Disputes Act.

Respectfully submitted,

Roger C. Jones

**HUDDLES, JONES**
**SORTEBERG & DACHILLE, P.C.**
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
(301) 621-4120
(301) 621-4473 (fax)
jones@hjpc.com

Counsel for Plaintiff,
Grunley-Walsh, LLC

DATED: June 18, 2007